CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
10/29/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
    DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| TRAVELERS HOME & MARINE INSURANCE CO., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHRISTOPHER LANDER, *et al.*,<br><br>*Defendants*. | CASE NO. 3:18-cv-118<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiffs Travelers Home & Marine Insurance Co. and Automobile Insurance Company of Hartford, Connecticut's (collectively, "Travelers") Motion for Summary Judgment, Dkt. 15, and Defendant Christopher Lander's Cross-Motion for Partial Summary Judgment. Dkt. 17. Travelers issued a homeowners policy and an umbrella policy to Lander, a physician specializing in pain management, who has been sued in state court by former coworkers, Defendants Dr. Rasheed Siddiqui and Sherri Johnson, after allegedly brandishing a gun outside of their pain management practice. Dkt 1. In its Motion for Summary Judgment, Travelers seeks a declaratory judgment that it has no duty to defend or indemnify Lander in the underlying action under either the homeowners or umbrella policy, arguing that (1) the underlying incident does not constitute an "occurrence" under either policy; (2) the policies do not cover injuries that are "expected or intended" by the insured; and (3) the policies only cover occurrences resulting in "bodily injury." Dkt. 16.

In his Cross-Motion for Summary Judgment, Lander seeks a declaratory judgment that Travelers owes him a duty to defend under both policies, arguing that the underlying action does allege a covered "occurrence" that resulted in bodily injury and that it is not subject to an exclusion. Dkt. 18. Because the Court concludes that the underlying incident does not constitute an

1

"occurrence" under either policy, the Court will grant Travelers' Motion for Summary Judgment and issue a declaratory judgment that Travelers is not obligated by either policy to defend Lander in the underlying actions.

## I. FACTUAL BACKGROUND

The following is undisputed by the parties. Travelers issued a homeowners policy to Lander with a policy period from August 15, 2016 to August 15, 2017. Dkt. 7 at 24. The homeowners policy provides coverage for suits brought against the insured "because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." Dkt. 1, ¶ 26; *see also* Dkt. 1, ex. 3. The policy defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results." Dkt. 1, ¶ 27. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in" bodily injury or property damage. *Id*.

Section II of the homeowners policy contains an exclusion providing that coverage does not extend to "bodily injury" or "property damage" "which is expected or intended by an 'insured' even if the resulting 'bodily injury' or 'property damage'" in question is "of a different kind, quality or degree than initially expected or intended; or . . . is sustained by a different person, entity, real or personal property, than initially expected or intended." *Id*. ¶ 28.

Travelers also issued Lander an umbrella policy. This policy provides coverage for "damages for which an 'insured' becomes legally liable due to 'bodily injury,' 'property damage,' or 'personal injury' caused by an 'occurrence.'" *Id*. ¶ 31; *see also* Dkt. 1, ex. 4. "Bodily injury" is defined as "bodily harm, sickness or disease," including "required care, loss of services, death and mental anguish that results." Dkt. 1, ¶ 33. An "occurrence" is defined as "[a]n accident, including

continuous or repeated exposure to substantially the same general conditions, that results in 'bodily injury' or 'property damage' during the policy period." *Id*.

The umbrella policy also contains an exclusion providing that coverage does not extend to "'bodily injury' or 'property damage' arising out of an act which is expected or intended by an 'insured' to cause 'bodily injury' or 'property damage,'" even if the injury or damage "[i]s of a different kind, quality or degree than expected or intended; or . . . [i]s sustained by a different person or entity than expected or intended." *Id*. ¶ 34.

Dr. Rasheed Siddiqui and Sherri Johnson, also named as Defendants by Travelers in the present action, each filed suit against Lander in Albemarle County Circuit Court for conduct Lander engaged in on and leading up to November 21, 2016. Dkt. 18 at 2. In Siddiqui's suit, Siddiqui alleges that he and Lander started a pain management practice called Charlottesville Pain Management Center, PLLC ("CPMC") in 2002. Dkt. 1, ¶ 10. Johnson was subsequently retained as an employee of the practice. *Id*. ¶ 10. According to the complaints, Siddiqui came to believe in 2014 that Lander was "impaired' while practicing at CPMC. Dkt. 1, ex. 1, ¶ 6, Dkt. 1, ex. 2, ¶ 5. Siddiqui filed a complaint against Lander with the Virginia Board of Medicine and staged an intervention. Dkt. 1, ex. 1, ¶¶ 8, 11. Lander was allegedly humiliated by the intervention and informed Siddiqui he could no longer work at CPMC. *Id*. ¶¶ 14–15. Siddiqui and Johnson allege that Lander exhibited a pattern of concerning behavior, including following Siddiqui after work, photographing the front and back of the CPMC office, driving past Siddiqui's home, and requesting a key to CPMC from the doctor who managed the building where CPMC is located. *Id*. ¶¶ 21–27.

According to the complaints, on November 21, 2016, Lander purchased a 9mm Glock and 200 rounds of ammunition, consumed alcohol and prescription pills, drove to the CPMC office,

and parked directly outside of Siddiqui's window. *Id*. ¶¶ 28–38. Lander then allegedly brandished the firearm such that people in the parking lot and CPMC office could see it, opened his car door, and fell to the ground as he attempted to exit the vehicle. *Id*. ¶¶ 39–41. According to the complaints, the office was locked, patients were moved away from windows, and the police were called while two bystanders detained Lander in the parking lot. *Id*. ¶¶ 43–45. Lander is alleged to have later pled guilty to driving under the influence and brandishing a firearm within 1,000 feet of a school. *Id*. ¶ 59.

The underlying suits each contain the following counts against Lander: 1) intentional infliction of emotional distress; 2) negligent infliction of emotional distress; and 3) assault. Dkt. 1 at 21. The suits allege that Lander "knew or should have known" that his actions would cause emotional distress, and that Lander's actions put Siddiqui and Johnson "in reasonable fear of imminent physical injury." Dkt. 1, ex. 1, ¶¶ 62, 71; Dkt. 1, ex. 2, ¶¶ 54, 63. Siddiqui alleges that he has lost twenty-five pounds and has experienced difficulty eating, sleeping, and concentrating since the incident. Dkt. 1, ex. 1, ¶ 75. Johnson alleges that she has trouble sleeping and experiences anxiety, hives, and panic attacks as a result of the incident. Dkt. 1, ex. 2 ¶ 67.

Lander tendered the underlying actions to Travelers for defense and indemnification pursuant to the homeowners and umbrella policies. Travelers is defending Lander against the underlying suits under a reservation of rights. Dkt. 1 ¶ 23.

## II.  LEGAL STANDARD

"Summary judgment is particularly well-suited for resolution of insurance coverage disputes because the construction of insurance contracts is a legal question." *Mount Vernon Fire Ins. Co. v. Adamson*, No. 3:09-cv-817, 2010 WL 3937336, at *1–2, (E.D. Va. Sept. 15, 2010) (citations omitted). Fed. R. Civ. P. 56(a) provides that a court should award summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." V*ariety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The nonmoving party must "show that there is a genuine dispute of material fact for trial . . . by offering sufficient proof in the form of admissible evidence." *Id.* The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id.*

### III. APPLICABLE LAW

Under Virginia law,[1] courts construe insurance policies according to standard principles of contract interpretation. "Virginia strictly adheres to the 'plain meaning' rule: 'where an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . because the writing is the repository of final agreement between the parties.'" *Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779, 788 (E.D. Va. 2007) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 405 (4th Cir. 1998)).

"Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is on the insurer to prove that an exclusion applies." *Granite State Ins. Co. v. Bottoms*, 415 S.E.2d 131, 134 (Va. 1992). "Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." *Id*. Contractual language is ambiguous "when it may be understood in more than one way or when it refers to two or more things at the same time." *Id*. "[A]mbiguous language

---

[1] The parties agree that the Court should apply Virginia law. Dkt. 16 at 12; Dkt. 18 at 4.

5

in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it." *Id.*

When interpreting an insurance policy, "courts must not strain to find ambiguities . . . or examine certain specific words or provisions in a vacuum, apart from the policy as a whole." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005) (collecting Supreme Court of Virginia decisions). "Each component of an insurance contract 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.'" *Transcon. Ins. Co. v. RBMW, Inc.*, 551 S.E.2d 313, 318 (Va. 2001) (quoting *Suggs v. The Life Ins. Co. of Va.*, 147 S.E.2d 707, 710 (Va. 1966)).

Under Virginia law, "only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012). "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." *Id.* "'[A]n insurer's duty to defend . . . is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy.'" *Id.* (quoting *Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 475 S.E.2d 264, 265–66 (Va. 1996)). "On the other hand, if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend." *Id.* at 535–36 (citing *Travelers Indem. Co. v. Obenshain*, 245 S.E.2d 247, 249 (Va. 1978)). As a result, "when a complaint's allegations could

support alternative theories of liability (e.g., claims for both intentional torts and negligence) and one theory falls within the coverage agreement, the insurer has a duty to defend the insured against all claims." *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 528 (4th Cir. 2015)

If the Court determines that Travelers has no duty to defend Lander in the underlying actions, then, as a matter of law, Travelers also has no duty to indemnify Lander in connection with those suits. *See, e.g.*, *Admiral Ins. Co. v. Marsh*, No. 3:12-cv-601-JAG, 2013 WL 3270555, at *3 (E.D. Va. June 26, 2013) (noting that "[t]he duty to defend imposes a broader duty than the duty to indemnify," and that thus "'if there is no duty to defend . . . there [also] can be no duty to indemnify'" (citing *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 427 (E.D. Va. 2000)).

### III. ANALYSIS

Travelers raises three arguments in favor of its Motion for Summary Judgment: (1) The underlying actions do not allege an "occurrence" that triggers any duty to defend under either the homeowners policy or the umbrella policy; (2) the policies' "expected or intended" exclusion applies and vitiates any duty to defend; and (3) the underlying actions do not allege any "bodily injury" that would trigger a duty to defend under the policies. Lander's Cross-Motion for Summary Judgment tracks Travelers' arguments, Dkt. 18 at 6, 11, so the two motions will be analyzed together. Because the Court concludes that the underlying incident does not constitute an "occurrence" under either the homeowners or umbrella policy, Travelers owes no duty to defend Lander irrespective of the policies' exclusions or treatment of the "bodily injuries" alleged.

Both policies provide for defense of suits arising from "occurrences" that result in "bodily injury" or "property damage." Dkt. 1, exs. 3, 4. Both policies define an "occurrence" as "[a]n

7

accident, including continuous or repeated exposure to substantially the same general conditions" resulting in "bodily injury." *Id*.

Travelers contends that, although the underlying suits include negligent infliction of emotional distress claims, the underlying facts allege only intentional acts by Lander, not accidental ones. For his part, Lander argues that the underlying suits allege conduct that constitutes an "occurrence" under the policies because the underlying suits do not allege "purposeful conduct by Lander directed at Siddiqui or Johnson." Dkt. 23 at 4. Furthermore, Lander notes that he "did not shoot his gun while at CPMC," "advance" toward Siddiqui or Johnson, "say or do anything indicating an intent to injure them," or "display his gun for others to see."[2] *Id*. Lander contends that he simply "accidentally drove his car up onto the curb" and "accidentally stumbled to the ground." *Id*. at 5.

The Supreme Court of Virginia has held—in a case involving an insurance policy that defined "occurrence" in the same way it is defined in the policies here—that an "intentional act is neither an 'occurrence' nor an 'accident' and therefore is not covered by the standard policy." *AES Corp.*, 725 S.E.2d at 536. The court continued: "If a result is the natural or probable consequence of an insured's intentional act, it is not an accident," *id*., "even if the complaint describes it in terms of negligence," *State Farm Fire & Cas. Co. v. Lewis*, No. 3:14-cv-391, 2014 WL 12570949, at *4 (E.D. Va. Dec. 15, 2014). It is only where "the alleged injury" resulting from an initially intentional act stems "from an unforeseen cause that is out of the ordinary expectations of a reasonable person" that the injury "may be covered by an occurrence policy provision." *Id*. "For coverage to be

---

[2] Although Lander may characterize the underlying acts differently than the allegations contained in the Siddiqui and Johnson complaints, the eight-corners rule instructs the Court to analyze the language contained in the complaints and policies in determining whether a duty to defend exists. *AES Corp.*, 725 S.E.2d at 535 (Va. 2012).

precluded" under an insurance policy "because there was no occurrence, it must be alleged that the insured subjectively intended or anticipated the result of its intentional act or that objectively, the result was a natural or probable consequence of the intentional act." *Id*. This precedent is dispositive of the issues presented here.

Allegations of negligence in an underlying action do not necessarily mean a complaint alleges a covered "occurrence." "[A]llegations of negligence are not synonymous with allegations of an accident." *Id*. at 620. Even if a party was "negligent and did not intend to cause the damage that occurred," the question remains whether the underlying suit alleges that the damages sustained "were the natural and probable consequences" of the defendant's intentional acts. *Id*. Other district courts have applied this principle accordingly. For instance, in *Nationwide Mut. Fire Ins. Co. v. Overstreet*, 568 F. Supp. 2d 638, 651–52 (E.D. Va. 2008), the Eastern District of Virginia applied Virginia law and concluded that the conduct alleged in an underlying action was not a covered "occurrence" even though the plaintiff in the underlying action had alleged gross negligence. The court reasoned that "the factual allegations" relating to the defendant "unquestionably show that his alleged actions were intentional" and that there was "simply nothing in these factual allegations that might plausibly be construed to mean that the injuries" the defendant caused "were the result of an 'accident' or were not intended." *Id.* at 651. *See also Lark v. W. Heritage Ins. Co.*, 64 F. Supp. 3d 802, 809 (W.D. Va. 2014) (J. Conrad) (holding that the defendant's negligent acts were not accidental and thus did not constitute occurrences under Virginia law).

Here, the underlying suits include a count for negligent infliction of emotional distress alleging "that Dr. Lander's actions were at a minimum negligent." *See, e.g.*, Dkt. 1, ex. 1, at 11–12. But, applying Virginia law as set forth in *AES Corp.* and *Nationwide Mut. Fire Ins.*, there is simply no basis for construing the factual allegations in the underlying actions to mean that

9

Siddiqui's and Johnson's injuries were the result of unintentional or accidental conduct by Lander. The underlying suits plainly allege almost solely intentional conduct, namely that Lander engaged in a series of harassing behaviors toward Siddiqui over several months after Siddiqui staged an intervention, purchased a firearm, consumed alcohol and prescription pills, drove to CPMC, stopped directly outside of Siddiqui's window, "brandished his 9mm Glock, such that it was seen by others in the CPMC parking lot," "opened his vehicle door, attempted to get out of his vehicle, and fell to the ground with the 9mm Glock in his hand." *Id*. at 5–8. The distress Siddiqui and Johnson allege would "objectively" appear to be the "natural or probable consequence" of Lander's alleged intentional acts of brandishing a firearm outside of their workplace.[3] *AES Corp.*, 725 S.E.2d at 535–36.

Furthermore, Lander falling to the ground as he exited his vehicle may have been accidental, but this hardly obviates the long string of intentional conduct allegedly culminating in Siddiqui's and Johnson's injuries. It is clear from the complaints that Siddiqui and Johnson allege to have been harmed not by Lander merely falling as he exited his vehicle, but by Lander intentionally driving to their practice, gun in hand, after months of alarming behavior directed toward them. A single unintentional act in a linear series of overt conduct does not trigger a duty to defend. "The injuries allegedly suffered by" Siddiqui and Johnson "are clearly the 'natural or probable' consequences of the" overt acts "alleged in their complaints" and "therefore do not qualify as 'occurrences.'" *Lark*, 64 F. Supp. 3d at 809.

---

[3] At oral argument, counsel for Lander stated that Lander drove to the CPMC offices to commit suicide. Even if consideration of such an assertion would not violate the eight-corners rule, *AES Corp.*, 725 S.E.2d at 535, the Court fails to see how such a fact would alter the Court's conclusion that the distress Siddiqui and Johnson allege objectively appears to be the natural or probable consequence of Lander's alleged intentional acts.

Finally, Lander argues that nowhere in the complaint does it state that Lander "intended to commit an act that put [Siddiqui and Johnson] in fear of imminent injury," Dkt. 18 at 8. "An allegation that Lander committed an act that was intentional with respect to Siddiqui and Johnson is absent from the underlying actions." *Id*. But this misconceives the intentionality relevant to this inquiry. The relevant inquiry here is whether or not Lander's actions were intended, not the results that flowed from them. The complaints speak almost solely of the former sort of intentionality. As for the results, if it is "the natural or probable consequence of an insured's intentional act, it is not an accident." *AES Corp.*, 725 S.E.2d at 536.

In sum, Siddiqui and Johnson complaints do not allege facts and circumstances that, if proven, could qualify as a covered "occurrence" under either the homeowners or umbrella policy. *See id.* at 535. Therefore, on this basis alone, the Court can conclude that Travelers duty to defend Lander in the underlying suits was not triggered,[4] entitling Travelers to summary judgment on this issue. This is true regardless of whether an exclusion would otherwise vitiate any duty to defend, and regardless of whether the underlying actions allege a "bodily injury" that would trigger any duty to defend under the policies.

### IV. CONCLUSION

The Court will grant Travelers' motion for summary judgment, finding that Travelers has no duty to defend or indemnify Dr. Lander in the underlying actions because the underlying actions do not allege an accidental "occurrence" covered under either the homeowners or umbrella policy. For the same reasons, the Court will deny Lander's cross-motion for summary judgment.

An accompanying order will issue.

---

[4] And, consequently, Travelers duty to indemnify Lander was never triggered either. *See AES Corp*, 725 S.E.2d at 535.

11

Entered this  29th  day of October, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE